DROST *et al.* v. ROBINSON, treasurer.
SCHAUFELE *et al.* v. ROBINSON, treasurer.
WILKINSON *et al.* v. ROBINSON, treasurer.

704

Nos. 14284, 14285, 14286.   October 13, 1942.

*Isaac S. Peebles Jr.,* for plaintiffs.

*W. K. Miller* and *Hammond, Kennedy & Yow,* for defendants.

DUCKWORTH, Justice. It is apparent that the three cases are so similar that a decision in one will be a determination of the others; and consequently they will all be decided in this opinion. In *DeWitt* v. *Richmond County,* 192 *Ga.* 770 (16 S. E. 2d, 579), those portions of the pension act of 1937 (Ga. L. 1937, p. 738) pertaining to retirement benefits after twenty-five years service were construed. The present cases involve the other portions of that act relating to payments for total and permanent disability, a determination of who is embraced in the word "employee" as used in the act, as well as the duties of the county commissioners and the county treasurer in connection with the pension fund provided for in that act.

By section 2 of the pension act it is provided that three per cent. of the monthly salary shall be deducted "and deposited in said permanent pension fund." Section 12 authorizes payment to the county treasurer of one third of one per cent. of these deductions as they are made, as compensation for his services as custodian of the pension fund and keeping a complete record of each employee and of receipts and disbursements. It is further provided, that the commissioners as the trustees of the pension fund may invest same in such investments as trust estates are allowed to invest in under the laws of this State, or that the county commissioners may from time to time borrow from said funds, and pay a rate of interest of not less than four per cent. per annum. Under these provisions of the act the treasurer as custodian is charged with the duty of depositing all deductions from salaries at the time they are made to the credit of the pension fund. This duty can be performed only when the county commissioners pay in cash, simul-

taneously with the payment to the employee of ninety-seven per cent. of his salary, the three per cent. deduction to the custodian. The provision of the act authorizing the commissioners to borrow from the pension fund does not mean that it can be borrowed in violation of the constitutional limitations upon the authority of the county to borrow. They may borrow when and only when there are no legal obstacles, and when they can execute a valid obligation to repay, with interest of not less than four per cent. Such obligation to repay should be made payable to the custodian and delivered to him at the time the money is borrowed. In view of the purpose for which the pension fund is to be used, together with the trust relationship of the commissioners thereto, the time for repayment of any money borrowed should be definitely fixed by terms of the obligation to repay which the county commissioners must execute. In each of these cases the custodian asserts that the three per cent. deduction from salaries has never been paid to him. The act is mandatory that such deductions be paid to the custodian at the same time the salaries from which they are made are paid to the employee. The law is satisfied only when the custodian has in his custody the entire pension fund, or in lieu thereof the investments which the act authorizes. The defendant could not be required to pay the demands of the petitioners (if they were otherwise valid) if the county commissioners have failed to pay to him in cash the deductions from salaries, and if because of this fact he has no funds available with which to pay such claims. Since the judgment excepted to was rendered on pleadings the allegations of which are in conflict as to whether the defendant had funds with which to pay the claims of the petitioners, it can not be held that the judgment in this respect is erroneous.

■ Another question presented by these records is whether the term "permanent and total disability" as used in the act includes all such disability without regard to its origin or cause, or whether it is limited to such disability when caused by physical injury. Section 4 of the act attempts to define the meaning of total and permanent disability as there used, but there is ambiguity in the definition itself. It is stated that "total and permanent disability shall mean that the employee is not able, on account of disability, to adequately discharge the duties of his position, except upon the recommendation of three reputable physicians, after examination,

who shall consider the case and make their findings." The section further provides that the recommendation of the physicians shall state that they "find him or her totally and permanently disabled from performing the duties of his or her position," or, that they "do not find him or her totally and permanently disabled from performing the duties of his or her position." It will be observed that after stating what total and permanent disability shall mean, without pause or punctuation, the act continues with the words "except upon the recommendation of three reputable physicians," etc. The quoted language purporting to be a definition of what is meant by permanent and total disability, standing alone, would indicate that the origin or cause of such disability was immaterial, and would not affect the right of the employee who was so disabled to receive the benefits provided in the act. The general scheme and purpose of the legislation is a proper criterion of its construction. *Carroll* v. *Ragsdale,* 192 *Ga.* 118 (15 S. E. 2d, 210). A circumstance while not sufficient within itself to show the legislative intent on the question of the origin of the disability referred to, yet having some bearing thereon, is the entire scheme of the legislation together with the means therein provided for its execution. The legislative scheme is to provide benefits for county employees, but such benefits are by terms of the act restricted to the limited funds made available thereunder by deducting three per cent. of the salaries belonging to the county employees. The beneficient features of the law are thus tied in with the payments made by the employees themselves. No original fund or capital is set up by the act, and such benefits as are paid thereunder are dependent upon the gradual accumulation of a fund from the small salary deductions. It is thus obvious that the legislature did not intend that unlimited benefits should be paid from such limited funds. There is no provision in the act fixing an age limit of an employee beyond which the total disability benefits would not be paid. Therefore, under the terms of the act, if total disability is compensable without regard to its origin, the county authorities might easily consume the entire fund immediately by the employment of a sufficient number of aged persons who would immediately become totally disabled because of age. A court would not be justified in so construing the act as to make the legislature intend such disastrous results for the legislative scheme. If disability arising from

sickness or disease is compensable under the act, then again the demands for benefits would likely exceed by far any funds available for their payment. Another provision of the act (section 5) is indicative of a legislative intent to limit permanent and total disability benefits to disability arising from accident or injury received. After stating that should the physicians find the employee totally and permanently disabled, the employee should be declared so disabled, it is further stated that such employee shall be "entitled to draw the pension hereinbefore set out, and his right to draw said pension shall date back to the time of the injury." Obviously there must be a starting point from which disability benefits can be paid. If the act had been silent on this point, it might have been construed to intend that the starting point be the time when the disability began, without regard to the cause of that disability; but where the act specifically named and fixed that starting point, no other can be fixed by construction. Thus it is seen that in order for any employee to receive such disability benefits, such payments must start at a time when that employee received an injury. It follows that in the absence of an injury no starting point for payments can be found, and without a starting point no payment can be made. We construe the act to mean that permanent and total disability, in order to be compensable thereunder, must originate with some physical injury suffered by the employee, and that permanent and total disability caused by sickness, disease, or old age is not compensable.

But it is insisted by petitioner Drost that he is entitled to the total-disability benefits, because his disability arose from physical injury suffered on November 19, 1938. Section 11 of the pension act directs that the deduction from salaries be begun immediately upon passage of the act, but declares that "none of the benefits herein provided for shall be available until the expiration of three years from the date of the passage of this act." The obvious purpose of the legislature in thus postponing the benefit payments for a period of three years after the salary deductions were begun was to allow an accumulation of a pension fund, and thus provide a means for paying benefits. If the act were given a construction that would entitle every employee to receive benefit payments after the three-year period for disability arising during that period, nothing would be accomplished by the provision of the act postponing

payment until the expiration of three years. If the accumulations during that period were adequate to cover all such claims, then no reason appears why payment should not have been made at the time the disability arose. If the fund at the end of the three-year period was adequate to pay benefits for all disabilities arising during that period, it would have been adequate to pay such benefits at the time the disability arose during the three-year period. Thus it clearly appears that the legislature intended that no employee should receive compensation under the act at any time for disabilities arising during the three-year period during which the act provides that none of the benefits thereunder should be available; and accordingly the disability arising from injury on November 19, 1938, which was less than three years after the date of the passage of the act, is not compensable.

■ The records present the further question of whether or not deputy sheriffs and deputy jailors are employees of the county, under the terms of the pension act. Section 10 attempts to define the word "employee" as therein used, but the definition is itself ambiguous. It virtually amounts to an assertion that an employee as there used means an employee, the exact language of the act being: "The word 'employee' whenever used in this act shall mean any and all regular employees of any county to which this act is applicable, with the exception of those holding official position (and except the county attorney) to which they are elected by the people." Deputy sheriffs and deputy jailors are employees of the sheriff, whom the sheriffs alone are entitled to appoint or discharge. *Board of Commissioners of Richmond County* v. *Whittle*, 180 *Ga.* 166 (178 S. E. 534). They have no duties save alone duties of the sheriff, which as his deputy and his agent they are by law authorized to perform. They are required to give bond for the faithful performance of duties, not to the Governor as required of all public officers unless otherwise provided by law (Code, § 89-402), but to the sheriff whose deputies or agents they are (§ 89-426). The sheriff is required to give bond payable to the Governor, and his bond is conditioned for the faithful performance of his duties as sheriff, *by himself, his deputies, and his jailors.* Code, § 24-2805. The sheriff, and not the county, is liable for the misconduct of his deputies. § 24-2812. The tenure in employment of a deputy jailor or deputy sheriff is dependent, not alone upon the

will of the sheriff whose employee he is and who may discharge him when he chooses, but also upon the re-election of the sheriff. Thus it is impossible for such deputies to calculate with any degree of certainty when their employment will terminate. The marked difference in the employment of such deputies and that of employees of the county commissioners is that deputies perform duties of the sheriff, which cease when the sheriff leaves office; whereas employees of the commissioners perform duties of their own in rendering services to the county. Such services to the county must continue regardless of how many changes of commissioners take place. The legislature is presumed to have known the law applicable to the employment and duties of deputy sheriffs and deputy jailors, and thus to have known when drafting this act that its application to them would be unfair, in that they would be at a hopeless disadvantage in the matter of benefits receivable thereunder as compared to regular county employees whose continued employment depends alone upon the will of the county commissioners. Of course, it is provided in section 13 of the act that when an employee is discharged *for reason* before the expiration of twenty-five years, he shall be refunded one half of the amount deducted from his salary. This provision for a refund becomes operative only when the employee has been discharged for a reason, and the loss of position by a deputy sheriff or jailor because of the defeat at an election of the sheriff who employed him would not be a discharge for reason as contemplated by the act. The act is construed to apply to neither of the petitioners in the present 'cases. Accordingly, they were not entitled to the benefits claimed, and the commissioners were unauthorized to deduct three per cent. of their salaries.

It is strongly contended, however, by counsel for the plaintiffs, first, that having collected the three per cent. salary deductions, the county commissioners and county treasurer are estopped from denying that the act is applicable; and second, that since by order of the commissioners, following a finding of the physicians on application of the petitioners for disability benefits, they were adjudged to be so entitled, that order constitutes an adjudication upon that question and can not now be reviewed. County officials are never estopped from insisting upon an observance of the law applicable to their offices. There are no facts here which would

estop the county treasurer from denying that the pension act is applicable to either of the petitioners. But at the same time, these deductions from salaries having been made without authority of law, they are entitled to a refund thereof as ordered by the trial judge. While the action of the physicians and of the county commissioners could hardly be termed adjudications of the question of the right of these applicants to disability benefits under the act, yet the petition in each case set forth those entire proceedings; and it is thus shown that neither of the applications was made by an employee entitled to such benefits under the act. Nor do the applications or the findings of the physicians or commissioners describe or define permanent and total disability such as is compensable under the pension act. Therefore the findings and orders were void on the face of the record, and may be disregarded or attacked by the defendant in these cases. Code, § 110-701.

*Judgments affirmed. All the Justices concur, except Hewlett, J., not participating.*