A93A1178, A93A1179. WAYNE COUNTY v. HERRIN et al.;
and vice versa.

(437 SE2d 793)

POPE, Chief Judge.

Plaintiff Wayne County, acting by and through the Board of Commissioners of Wayne County (the "Board"), filed this action against its current sheriff, defendant David E. Herrin, and other named defendants who were employed by Herrin as deputy sheriffs when Herrin's term as sheriff began on January 1, 1993. The Board contends that Herrin improperly terminated 17 prior employees of the sheriff's office and hired the other named defendants in contravention of the county's personnel system. The defendants filed a counterclaim alleging the Board was interfering with the operation of the sheriff's office by refusing to pay for bonding the deputies hired by Herrin, refusing to pay for equipment and supplies for the operation of the sheriff's office and refusing to pay the deputies hired by Herrin for their services in that capacity. After a hearing on the claims asserted by the parties, the trial court issued an order holding that the personnel system was properly adopted pursuant to OCGA § 36-1-21 but that Sheriff Herrin nonetheless acted within his authority in refusing to reappoint certain employees of the sheriff's office in accordance with OCGA § 15-16-23. The trial court therefore enjoined the Board from failing to provide to the deputies appointed by Herrin "the pay, benefits, and other rights and privileges associated with their employment with the Wayne County Sheriff's Office" and from failing to provide funds to the sheriff's office that had been approved in the budget for the operation of that office. In Case No. A93A1178, the Board appeals from that order, and in Case No. A93A1179, the defendants cross-appeal.

The following facts are pertinent to both appeals: The Board adopted Wayne County's current personnel system on December 6, 1988.[1] On December 29, 1988, the same day he was sworn into office for his term beginning on January 1, 1989, the previous sheriff of Wayne County, James E. Warren, requested that the positions of chief deputy, secretary, chief detective, detective, deputy sheriff, ser-

---

[1] The personnel policy and procedures adopted to implement the personnel system state that one of the reasons the personnel system was implemented was to assure "that employees are protected against coercion for partisan political purposes and are prohibited from using their official authority for the purpose of interfering with or affecting the result of an election or a nomination for office."

geant, and detention officer be subject to and covered by the personnel system. On December 18, 1992, the Board adopted a resolution authorizing elected officials to bring their employees into the personnel system, and on December 28, 1992, Sheriff Warren, whose term was to expire on December 31, 1992, renewed his request first made in December 1988 that the above-mentioned positions in the sheriff's department be made a part of the personnel system.[2] During December 1992, Sheriff-elect Herrin met with county personnel who explained the Wayne County personnel system to him and Herrin indicated during that meeting that he did not wish to be bound by the provisions concerning the employment of deputies. By letters dated January 1, 1993, the first day of his term of office, Sheriff Herrin informed 17 employees of the sheriff's office that they were not being "reappointed . . . to the office of Deputy Sheriff of Wayne County" and that "this termination is effective immediately."[3] On that same day, Sheriff Herrin appointed the remaining defendants to the office of deputy sheriff. The county has continued to pay the 17 employees who were dismissed or not reappointed by Herrin and has refused to pay those appointed by Herrin to the office of deputy sheriff.

1. Before addressing the issues raised in Case No. A93A1178, we first address arguments raised by defendants in their cross-appeal in Case No. A93A1179. Defendants argue the trial court erred in holding that the Wayne County personnel system was adopted in accordance with OCGA § 36-1-21 and that it is applicable to the sheriff's office. A brief history of that Code section is helpful to our analysis. As the trial court correctly noted, the United States Supreme Court signaled the end of the practice of patronage dismissals for rank and file employees of elected officials in *Elrod v. Burns*, 427 U. S. 347 (96 SC 2673, 49 LE2d 547) (1976). In that case certain noncivil service employees of the Cook County, Illinois, Sheriff's Office, who were Republicans, brought suit against the newly elected Democratic sheriff alleging they were dismissed in violation of the First and Fourteenth Amendments for the sole reason that they were not affiliated with or sponsored by the Democratic Party. Id. at 350. The Court held "that the practice of patronage dismissals is unconstitutional under the First and Fourteenth Amendments" and patronage dismissals must be limited to policy making positions. Id. at 372-373. Accord *Branti v. Finkel*, 445 U. S. 507 (100 SC 1287, 63 LE2d 574) (1980) (holding the First and Fourteenth Amendments protect assistant public defenders

---

[2] Although the record does not reflect whether Warren requested that all positions in the sheriff's office be placed under the personnel system, the parties argue in their briefs that all positions other than the sheriff are now part of that system.

[3] Even though all terminated employees held the title of deputy sheriff, they served various functions including secretary, detention officer, and clerk/typist.

from dismissal solely because of their political beliefs).

In light of the mandates contained in those cases and the growing utilization of civil service systems, the Georgia Constitution was amended in 1983 to provide that "[t]he General Assembly may by general law authorize the establishment by governing authorities of civil service systems covering county employees or covering county employees and employees of the elected county officers." Ga. Const., Art. IX, Sec. I, Par. IV. In 1986, the General Assembly implemented that provision by enacting OCGA § 36-1-21, which provides in pertinent part:

"(a) The governing authority of any county is authorized to provide by ordinance or resolution for the creation of a civil service system for employees of the county, other than elected officials or persons appointed to positions for specified terms.

"(b) Subsequent to the creation of a civil service system, the county governing authority which created the system may provide by ordinance or resolution that positions of employment within departments subject to the jurisdiction of elected county officers . . . shall be subject to and covered by the civil service system upon the written application of the elected county officer . . . having the power of appointment, employment, or removal of employees of the officer. . . . Once positions . . . are made subject to the civil service system, such positions shall not be removed thereafter from the coverage of the civil service system.

"(c) A civil service system created pursuant to the authority of this Code section shall be administered in such manner and pursuant to such rules and regulations as may be provided for by resolution or ordinance of the county governing authority which created the system."

Thus, in order to comply with the mandates of OCGA § 36-1-21, the governing authority of a county must first adopt by resolution or ordinance a civil service system. Defendants argue that because the current personnel system was adopted by motion rather than by resolution or ordinance, it is not in compliance with OCGA § 36-1-21. A similar argument was considered by our Supreme Court in *Allen v. Wise*, 204 Ga. 415 (50 SE2d 69) (1948). In that case it was argued that the Mayor of Savannah could only veto a resolution or ordinance and could not veto a "motion." However, our Supreme Court looked to the effect of the motion and concluded it had the same effect as a resolution and should be treated as such. Id. at 418-419. The same analysis is applicable in the case at bar. The term "resolution" is defined as "a formal expression of the opinion or will of an official body or public assembly by vote. . . . The term is usually employed to denote the adoption of a motion, the subject-matter of which would not properly constitute a statute. . . ." Black's Law Dictionary, p. 1310

(6th ed. 1990). Applying that definition to the facts of this case, we hold the motion creating the current personnel system was a resolution within the meaning of OCGA § 36-1-21. The parties do not cite and we are not aware of any authority requiring that resolutions of governing authorities be in a certain form. A review of the minutes of the Board's meetings contained in the record reveals that it was the custom and practice of the Board to act by adopting motions.[4]

With regard to the resolution dated December 18, 1992 that allowed elected county officials to bring positions of employment within their department into the personnel system, the trial court properly concluded that resolution complied with the dictates of OCGA § 36-1-21 (b). The resolution is in written form and recites that it is being adopted pursuant to OCGA § 36-1-21 (b). The trial court also correctly held Sheriff Warren's second request dated December 28, 1992 was effective to bring the requested positions in the sheriff's office under the personnel system. Although Sheriff Warren's term was about to end at the time of the second request, he was a duly elected county officer and he made the requisite written application to have positions of employment in the sheriff's office made subject to the personnel system. Thus, the Board and Sheriff Warren fully complied with all requirements set forth in OCGA § 36-1-21 (b) necessary to bring employees of the sheriff's office within the personnel system.

Defendants also argue that certain amendments to the personnel system were not properly effected. Assuming arguendo the Board had to comply with the dictates of Art. IX, Sec. II, Par. I (b) (1) of the Georgia Constitution in order to properly amend the personnel system, failure to do so would at most invalidate any proposed amendment and the personnel system as it was first adopted would still be effective. Ga. Const., Art. IX, Sec. II, Par. I (g). As the personnel policy has always required cause for dismissals, the Board's failure to properly amend the personnel system would not constitute reversible error in this case.

The record reveals that defendants' argument that no resolution concerning this personnel policy was spread on the minutes of the Board's meeting is erroneous. The minutes of the December 6, 1988 meeting contains the following paragraph: "Motion by Mr. O'Quinn, second by Mr. Denison to adopt the new personnel plan to be effective January 1, 1989. Mr. O'Quinn, Mr. Denison, Mr. Aspinwall, and Mr. Johnson voted yes. Mr. Lane voted no." As we have held this motion had the effect of a resolution, this language is sufficient to spread information of the policy on the minutes of that meeting. The

---

[4] As is noted in the Handbook for Georgia County Commissioners, the better practice is for a governing authority to act by adopting written resolutions and ordinances, which are drafted in accordance with a standard form.

minutes of the December 18, 1992 meeting further reflect that the resolution required by OCGA § 36-1-21 (b) was adopted by motion.

We also reject defendants' argument that the adoption of the personnel system by oral motion created an oral contract of employment with the county. Defendants' reliance on our decision in *Murray County v. Pickering*, 42 Ga. App. 739 (157 SE 343) (1931) and the Eleventh Circuit Court of Appeals' decision in *Ogletree v. Chester*, 682 F2d 1366 (11th Cir. 1982) as authority for that proposition is misplaced. At most the Board's adoption of a personnel system effected positions of employment with Wayne County, the oral adoption of the motion did not create oral contracts of employment.

2. Defendants further argue on cross-appeal that the trial court erred in failing to hold that OCGA § 36-1-21 is unconstitutional. "The Supreme Court shall be a court of review and shall exercise exclusive appellate jurisdiction in . . . all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question. . . ." Ga. Const., Art. VI, Sec. VI, Par. II. The appeals in this case were originally filed in this court, transferred by this court to the Supreme Court, and subsequently transferred back to this court. Since this court has no jurisdiction to consider a constitutional challenge to OCGA § 36-1-21, we must decline to address this argument raised by defendants. *In re W. M. F.*, 180 Ga. App. 397 (349 SE2d 265) (1986).

3. We next address the Board's contention in Case No. A93A1178 that the trial court erred in holding that the enactment of OCGA § 36-1-21 did not pro tanto repeal OCGA § 15-16-23. The Board argues that because these statutes are so repugnant to one another, the trial court's purported reconciliation of the two was error. The pertinent language of OCGA § 36-1-21 is set forth in Division 1. OCGA § 15-16-23 provides in pertinent part that "[s]heriffs are authorized in their discretion to appoint one or more deputies." As the parties correctly note, deeply embedded in our case law is the notion that the sheriff alone has the authority and power to appoint and fire deputies. " 'Deputy sheriffs and deputy jailors are employees of the sheriff, whom the sheriffs alone are entitled to appoint or discharge. *Board of Commissioners of Richmond County v. Whittle*, 180 Ga. 166 (178 SE 534) [(1935)]. They have no duties save alone duties of the sheriff, which as his deputy and his agent they are by law authorized to perform. . . . The sheriff, and not the county, is liable for the misconduct of his deputies. . . . The tenure in employment of a deputy jailor or deputy sheriff is dependent, not alone upon the will of the sheriff whose employee he is and who may discharge him when he chooses, but also upon the re-election of the sheriff. Thus it is impossible for deputies to calculate with any degree of certainty when their employment will terminate. . . . [D]eputies perform duties of the

sheriff, which ceases when the sheriff leaves office. . . .'" *Employees Retirement System v. Lewis*, 109 Ga. App. 476, 480-481 (136 SE2d 518) (1964). See also *Drost v. Robinson*, 194 Ga. 703, 710 (22 SE2d 475) (1942) (holding deputy sheriffs and jailers are employees of the sheriff only and the county is not liable for their misconduct).

In deciding whether OCGA §§ 15-16-23 and 36-1-21 can be reconciled, we are guided by decisions from other jurisdictions which have considered similar statutes in light of the mandate of *Elrod v. Burns*, supra. In *Ison v. Zimmerman*, 372 S2d 431 (Fla. 1979), the Florida Supreme Court refused to hold that a sheriff should have absolute control over his choice of deputies, reasoning that such a holding would contradict the spirit of the constitutional mandate establishing a civil service system and the legislative intent expressed in the statute allowing civil service systems to be created by special or local laws for deputies as officers. It is significant to note, however, that the Florida legislature specifically exempted the positions of the office of the sheriff, chief deputy, chief criminal deputy, and chief civil deputy from inclusion in a civil service system. Id. at 435. In *Yarosh v. Becane*, 406 NE2d 1355 (Ohio 1980), the Supreme Court of Ohio similarly held that the Ohio statute giving sheriffs power to hire and fire deputies is subject to the civil service rules contained in another chapter of the Ohio Code. Id. at 1358-1359. The Ohio legislature, however, also recognized that there are certain positions of employment in offices held by elected officials that should be exempt from any civil service system. Id. at 1359; see Ohio Rev. Code Ann. 124.11 (A) (9).

In New York several appellate decisions have dealt with similar issues and concluded that to the extent counties have assumed responsibility for or can be held liable for the tortious acts of deputies, the position of deputy may be placed in a civil service system. See *Thoubboron v. New York State Dept. of Civil Svc.*, 552 NYS2d 1012 (Sup. Ct. 1990), aff'd 572 NYS2d 494 (N.Y. App. Div. 1991), aff'd 594 NE2d 927 (N.Y. 1992) and the cases cited therein.

We hold the trial court correctly concluded that OCGA §§ 15-16-23 and 36-1-21 can be read consistently and that the later enactment of OCGA § 36-1-21 did not repeal OCGA § 15-16-23 by implication. However, we cannot agree with the manner in which the trial court reconciled these statutes. The trial court found that only the *positions* are protected under the Wayne County personnel system, and the sheriff has the authority at the beginning of his term to appoint a person to fill the position and the person appointed receives the employment protection by the personnel system for the term of the sheriff. The trial court's reconciliation of these statutes seeks to combine the merit and spoils (or political patronage) systems. However, civil service systems rest on the principles of a merit system rather than

(not in addition to) a spoils system, and are designed to protect people rather than positions. *Clark v. State Personnel Bd.*, 252 Ga. 548, 550 (2) (b) (314 SE2d 658) (1984); *Cohilas v. Clayton County Bd. of Commrs.*, 206 Ga. App. 134, 137 (424 SE2d 651) (1992). The benefits of a civil service system are two-fold: Civil service laws protect (1) the employee by providing them with job security for dedicated service; and (2) the public by allowing local governments to render more efficient services to the public. 15 AmJur2d Civil Service, § 1.

We hold that once positions in a sheriff's office have been made subject to a personnel or civil service system, a sheriff's authority to appoint deputies pursuant to OCGA § 15-16-23 is limited to vacancies created by the removal of employees in the manner provided under the applicable personnel or civil service system or vacancies created when employees resign or retire. We do not lightly limit the ability of sheriffs to employ persons loyal to him for the position of deputy sheriff. As our Supreme Court observed in *Warren v. Walton*, 231 Ga. 495, 499-500 (202 SE2d 405) (1973) (quoting *Foster v. Vickery*, 202 Ga. 55, 60 (42 SE2d 117) (1947), " '[t]he office of sheriff carries with it all of its common-law duties and powers, except as modified by statute. *Elder v. Camp*, 193 Ga. 320 (5) (18 SE2d 622) [(1942)]. Statutes in derogation of the common law must be strictly construed. (Cits.) Both under the rule of the common law and the statute law of force in this State, sheriffs are not restricted in their right to employ and discharge their deputies and employees, and any limitation or restriction which now applies to only one sheriff in this State must be strictly construed, and no powers or rights will be given to the reviewing or limiting authority except those definitely and positively granted by the General Assembly.' " However, the General Assembly has definitely and positively provided for the creation of county civil service systems and conferred on elected officials the ability to bring *all* employees in their office into the system. Our role is not to act as a policymaker for our legislature and we must presume that our legislature was aware of all potentially conflicting statutes and cases when it enacted OCGA § 36-1-21.[5]

We note that this case highlights a problem associated with our legislature's decision not to limit what positions within an elected official's office could be brought within a civil service system. Cf. *Ison*, 372 S2d at 435 (noting Florida legislature exempted sheriff's chief deputy, chief criminal deputy, and chief civil deputy from participation in civil service system); *Yarosh*, 406 NE2d at 1359 (noting that deputies or assistants who are in a fiduciary or administrative rela-

---

[5] As the Board points out, OCGA § 15-16-23 is not the only arguably inconsistent statute. For example, OCGA § 15-6-59 gives clerks of the superior court similar powers to appoint deputies and for that reason is arguably in conflict with OCGA § 36-1-21.

tionship with an elected official are not included in the state civil service system). OCGA § 36-1-21 currently allows all positions in an elected official's office to be brought under a civil service system and further provides that once positions are subject to the system the "positions shall not be removed thereafter from the coverage of the civil service system." It is probable that an elected official requesting that positions in his office be placed in a civil service system will request that all positions be placed under the civil service system, even policymaking positions, so that *all* employees who have served him well will be protected from political discharge if he is not reelected.[6] Unless our legislature decides to narrow the scope of civil service systems to exclude policymaking positions, elected officials who take office after positions in that office have been brought under a civil service system will be forced to work within the system and discharge any covered employee only for good cause, such as insubordination or poor job performance. See *Elrod*, 427 U. S. at 366.

4. This court will not consider defendants' contention that the trial court erred in failing to hold that OCGA §§ 15-16-23 and 15-16-24 preempt home rule legislation. Defendants do not show us and our review of the record does not reveal that this issue was brought to the attention of and considered by the trial court. It is well-settled that issues raised for the first time on appeal will not be considered. *Kennedy v. Johnson*, 205 Ga. App. 220, 222 (1) (421 SE2d 746) (1992).

5. Defendants posit that the trial court erred in failing to hold that "plaintiffs" should be estopped from denying that the employees of the sheriff's office serve at the pleasure of the sheriff. Estoppel is an affirmative defense that must be set forth in a responsive pleading. OCGA § 9-11-8 (c). Estoppel was not affirmatively pled by the defendants and our review of the record does not reveal that this issue was raised below; therefore this issue will not be considered on appeal. Furthermore, defendants' argument on appeal makes it clear that the "plaintiffs" that defendants wish to estop are the 17 individuals who were not reappointed or terminated from employment with the Wayne County Sheriff's Office by Sheriff Herrin, who are not parties to this litigation.

6. We also reject defendants' argument that Wayne County's personnel system is void as against public policy to the extent it attempts to restrain the sheriff's power to appoint and discharge his employees. In support of this argument defendants rely upon *Hewatt v. Bonner*, 142 Ga. App. 442 (236 SE2d 111) (1977), in which we held that an oral contract for employment for a specific term was unen-

---

[6] Although not presented in this appeal, another potential problem arises because the sheriff rather than the county is liable for the misconduct of deputies. *Drost v. Robinson*, 194 Ga. at 710; cf. *Thoubboron v. Dept. of Civil Svc.*, supra.

forceable against a sheriff because "[a]s a public officer, a sheriff may not be hampered in the administration of his duties to the public by employee contracts."[7] Id. at 443. However, the most recent expression of public policy on this particular issue was expressed when the Georgia Constitution was amended to allow the General Assembly to authorize the establishment by county governing authorities of civil service systems that would cover county employees *and* employees of elected county officers. Ga. Const., Art. IX, Sec. I, Par. IV. Accordingly, we find this argument to be without merit.

7. We next consider whether the trial court erred in refusing to grant the injunctive relief sought by the Board ordering Sheriff Herrin to reinstate the 17 employees of the sheriff's office whom he terminated without affording them due process rights in connection with their dismissal. We first note that a writ of mandamus rather than a writ of injunction is the proper remedy for the relief sought by the Board. *McAfee v. Bd. of Firemasters of Atlanta*, 186 Ga. 262 (197 SE 802) (1938) (holding writ of mandamus was the appropriate remedy to compel reinstatement of a fireman who was suspended in violation of the Civil Service Act). Although generally in Georgia no one in public employment has a right to such employment, *Barnes v. Mendonsa*, 110 Ga. App. 464, 465 (138 SE2d 914) (1964), the right to continued employment can arise when employment can only be terminated for cause. *Brownlee v. Williams*, 233 Ga. 548, 551 (212 SE2d 359) (1975). Section 10, paragraph G of the Wayne County Personnel Policies and Procedures provides that employees can be dismissed only for cause. Therefore, employees who are covered by that system, such as the 17 dismissed employees of the sheriff's office, have a property interest in their employment. Pursuant to Section 11 of the policies and procedures, any covered employee who is dismissed is entitled to written notice concerning what conduct constitutes just cause for dismissal and to appeal his dismissal to a grievance committee. *Brownlee*, 233 Ga. at 551. Sheriff Herrin's discharge of the 17 employees in violation of these provisions renders their dismissals illegal, void and null. See *McAfee*, 186 Ga. at 262. Accordingly, we find the trial court erred in failing to order Sheriff Herrin to reinstate the 17 dismissed employees.[8]

8. It follows that if Sheriff Herrin improperly dismissed the 17 employees, his action in hiring the defendants to replace those em-

---

[7] As we discussed above, the creation of a civil service system does not create a contract of employment, instead it imposes certain terms and conditions on existing employment positions.

[8] The Board is a proper party to seek a writ of mandamus ordering the sheriff to reinstate the improperly dismissed employees since under certain circumstances it may be held liable under 42 USC § 1983 for the acts of the sheriff in depriving sheriff office employees of their constitutional rights. See *Johnson v. Ballard*, 644 FSupp. 333 (N.D. Ga. 1986).

ployees is also improper. Therefore, we further hold that the trial court erred in ordering Wayne County to provide the employees hired by Sheriff Herrin as replacements for the employees who were illegally terminated with "all pay, benefits, and other rights and privileges associated with their employment with Wayne County." To the extent these persons have provided services to Wayne County, they are entitled to reasonable compensation for their services. This case is remanded to the trial court for proceedings consistent with this decision.

*Judgment reversed with direction in Case No. A93A1178. Judgment affirmed in Case No. A93A1179. Birdsong, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 10, 1993 —
RECONSIDERATION DENIED NOVEMBER 3, 1993 

*Leaphart & Johnson, J. Alvin Leaphart, James G. Johnson*, for appellant.

*Gary A. Bacon*, for appellees.

*Walker, Hulbert, Gray & Byrd, Charles W. Byrd, Malcolm J. Hall, Jim Chamberlin*, amici curiae.