S98A0697. KRIEGER v. WALTON COUNTY BOARD OF
COMMISSIONERS et al.
(506 SE2d 366)

FLETCHER, Presiding Justice.

This appeal involves a conflict between the Board of Commissioners of Walton County and its chairperson, John Krieger, concerning the scope of their respective powers and duties. Krieger filed a declaratory action challenging the authority of the board to hire, supervise, and fire county employees, prepare the agenda for com-

mission meetings, and obtain copies of his correspondence. The trial court ruled in favor of the board, holding that the chairperson does not have exclusive administrative authority over county matters and upholding the board's resolutions, actions, and contract as valid. Because the board has attempted to assume authority for hiring, supervising, and firing county employees without amending the local acts, we reverse in part.

## CHAIRPERSON'S CONTENTIONS

Krieger was elected chairperson in 1996 and took office on January 1, 1997. He contends that the board has stripped him of the executive and administrative duties vested in his position by law and illegally transferred the day-to-day responsibility for running the county to the board's other six members. He challenges five specific actions of the board as invalid: (1) a 1995 resolution transferring the authority to appoint and discharge civil service employees from the chairperson to the board; (2) a 1996 vote changing the immediate supervisor of department heads from the chairperson to the board; (3) a 1997 employment contract hiring an administrative assistant to the board; (4) a 1997 resolution directing the county clerk to prepare the agenda for commission meetings; and (5) a 1997 resolution directing the chairperson to provide copies of his mail to the county clerk. He argues that these actions affect the elected office of the chairperson and the composition and form of the county governing authority in violation of the state constitution.

## STATE CONSTITUTION AND GENERAL LAWS

1. The Georgia Constitution grants home rule to counties. "The governing authority of each county shall have legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law."[1] Paragraph 1(c) of the county home rule provision provides that these general powers granted to counties shall not extend to any action affecting any elective county office or the composition and form of the county governing authority, except by general law or local act.[2] We have construed an "action

---

[1] Constitution of the State of Georgia of 1983, art. IX, sec. II, para. I (a).

[2] See Constitution of the State of Georgia of 1983, art. IX, sec. II, para. I (c). Subparagraph (c) provides:

(c) The power granted to counties in subparagraphs (a) and (b) above shall not be construed to extend to the following matters . . .:

(1) Action affecting any elective county office, the salaries thereof, or the per-

affecting an elective office" to mean an attempt to eliminate a chairman from the position of chief executive officer of the county and an "action affecting the form of the county governing authority" to mean an attempt to confer executive powers on a county manager.[3]

The general laws of this state grant the governing authority of each county exclusive jurisdiction to control all county property, levy general taxes for county purposes, establish roads and bridges, fill vacancies in county offices, and regulate the county police, health, and support for the poor.[4] By local law, a county may delegate power over any of these issues to the chairperson or chief executive officer of the county governing authority.[5]

Nothing in the constitution or general laws of this state prevents the Walton County board from passing the resolutions and signing the contract challenged in this action. We have previously held that a county does not change its form of government by enacting an ordinance that diminishes the power of the chairperson and increases the power of the board in employing and discharging the county's non-merit system employees.[6] Subsequently, we upheld the right of a board to amend a local act to give the board, rather than the chairperson, authority to hire, supervise, and discharge county personnel.[7] Similarly, the Walton County board may transfer the authority to hire, supervise, and fire employees from the chairperson to itself, hire an administrative assistant for the board, place items on the agenda for commission meetings, and require the chairperson to provide copies of his official correspondence without affecting the office of chairperson or the form of county government in violation of the constitution or state laws.

## LOCAL LEGISLATION AFFECTING WALTON COUNTY

2. Krieger also challenges the validity of the board's actions as a violation of local acts. The Board of Commissioners of Walton County was established by local act in 1917.[8] Until 1955, the local acts

---

sonnel thereof, except the personnel subject to the jurisdiction of the county governing authority;

(2) Action affecting the composition, form, procedure for election or appointment, compensation, and expenses and allowances in the nature of compensation of the county governing authority.

[3] See *Gray v. Dixon*, 249 Ga. 159, 164 (289 SE2d 237) (1982).

[4] OCGA § 36-5-22.1 (a).

[5] OCGA § 36-5-22.1 (b).

[6] See *Guhl v. Williams*, 237 Ga. 586, 588 (229 SE2d 382) (1976).

[7] See *Gray v. Dixon*, 249 Ga. at 163; see also *Stephenson v. Board of Commissioners*, 261 Ga. 399 (405 SE2d 488) (1991) (board's exercise of its exclusive power to employ legal counsel for county officers does not violate constitutional provision precluding it from taking action affecting any elective county office).

[8] 1917 Ga. Laws 415.

described the "chairman" as "the chief manager" of county affairs and the board's "executive officer" and gave him the power to make all contracts, superintend all county work, and discharge the board's duties between meetings.[9]

In that year, section 14 of the local acts was amended to vest the power to purchase and contract in the full board and to require the chairperson as "executive office[r] for the board" to carry out the board's directives.[10] Specifically, the 1955 act gave the board all powers related to purchases and contracts, except purchases under $500; "complete authority and control over all county matters"; and all custody and control over county property. It directed the chairman to devote full time to the county's business, bring all matters pertaining to the board's duties to its attention at its regular monthly meetings, perform the duties of the board as directed by a majority, and "superintend all the work done by said county whether under contract or by hired labor."[11]

This language was reenacted in the 1971 act, which organized section 14 into subsections.[12] Subsection (c) deals with the powers to contract and ends with the following sentence: "Except as provided above, the full board is hereby vested with complete authority and control over all county matters."[13] Subsection (d) deals with the chairman's responsibility in performing the board's duties as it directs, and subsection (e) states that the chairman "shall superintend" all county work with the board having control over all county property. A later amendment increased the amount of purchases that the chairman could make without obtaining board approval or competitive bids to $5,000.[14]

In construing the local acts, we must follow the legislative intent and give words their ordinary meaning.[15] Because the local acts specify that the board has complete control over all county matters, it may assign various powers and duties to itself so long as its actions do not interfere with the responsibilities delegated to the chairperson under the local acts.[16] Thus, we construe the local acts to mean that the board has the authority to control the county's fiscal affairs, except purchases or contracts that cost less than $5,000; the chair-

---

[9] See id. at 417-418; 1929 Ga. Laws 747, 752; 1939 Ga. Laws 765, 769.

[10] 1955 Ga. Laws 2904, 2906.

[11] Id. at 2905.

[12] 1971 Ga. Laws 4052, 4053-4054.

[13] Id. at 4054.

[14] 1996 Ga. Laws 3983.

[15] See OCGA § 1-3-1.

[16] See *Mayor &c. of Savannah v. Savannah Elec. & Power Co.*, 205 Ga. 429, 436 (54 SE2d 260) (1949) (when statute contains general and specific provision, "the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision").

person remains the officer charged with executing the county's business as directed by a majority of the board.[17]

3. In the area of employment, section 14 specifically gives the chairperson the authority to "superintend all the work done by said county whether under contract or by hired labor." The word "superintend" means "to have or exercise the charge and oversight of: oversee with the power of direction: supervise."[18] Because section 14 expressly gives the chairperson the responsibility for superintending county work, we conclude that the chairperson is the supervisor of all county employees, including department heads, under the local acts. As a result, the board cannot assume the position of immediate supervisor or delegate supervisory responsibilities to its administrative assistant without seeking to amend the local acts.[19]

In this case, the board voted to revise job descriptions to make itself, rather than the chairperson, the immediate supervisor of department heads. The September 3, 1996, vote was on a commissioner's motion and did not involve an amendment to the local act. Because the board failed to amend the local acts by local legislation or a home rule ordinance, we conclude that its attempt to assume supervisory authority over department heads was invalid.

4. Unlike the power to supervise, the local acts do not expressly deal with the general power to hire and fire county employees.[20] They do, however, grant the board authority to hire specific employees: the road superintendent, additional counsel to defend lawsuits,[21] a county attorney,[22] and a board clerk.[23] Since the board has the express authority to hire these individuals, the necessary implication is that the board does not have the authority to hire other county employees. Instead, the general power to hire and fire rests with the chairperson

---

[17] See Letter from Michael J. Bowers, Attorney General, State of Georgia, to Bob Guhl, State Senator (March 21, 1997) ("the general power of the commission is vested in the board as a whole, with the chairman devoting his entire time to the business of the county and serving as the board's executive officer [with] certain limited and defined powers to act without the need for majority board approval").

[18] Webster's Third New International Dictionary 2294.

[19] See *Guhl v. Williams*, 237 Ga. at 588 (DeKalb County Board of Commissioners could decrease the chairperson's power in employing non-merit system employees by two home rule ordinances that repeal provisions in local act); *Gray v. Dixon*, 249 Ga. at 163 (Ware County Board of Commissioners could amend local act by local ordinance to give the board authority to hire, supervise, and fire employees and to create office of county manager).

[20] Cf. *Madden v. Bellew*, 260 Ga. 530 (397 SE2d 687) (1990) (local act gave chairperson of the Madison County Board of Commissioners authority to employ all county personnel with the approval of a board majority); *Capes v. Morgan*, 235 Ga. 1 (218 SE2d 764) (1975) (local act gave chairperson of the Newton County Board of Commissioners the power to hire and fire all employees).

[21] 1929 Ga. Laws at 754.

[22] 1939 Ga. Laws at 770.

[23] 1958 Ga. Laws 2097; 1929 Ga. Laws at 749.

in his position as the board's executive officer with power to superintend all of the county's work.

The Walton County civil service personnel policies support this division of authority. In 1991, the board established a county civil service system.[24] The policies designate the commission chairperson, who is "the chief executive officer of the County," as the person responsible for administering them. They further name him as the appointing authority for the departments under the administration of the county commission. The term "appointing authority" is defined as the "person who has . . . the authority to appoint and discharge all covered employees." Thus, as originally enacted, the personnel policies confirm that the chairperson had the power under the local acts to hire and discharge county employees.

The board reserved the right to amend the personnel policies at any time by resolution unless (1) the change affected an employee's property interest or (2) modified the relationship between the board and other appointing authorities. Relying on this right to amend, the board on February 7, 1995, passed a resolution changing the appointing authority for the departments under its administration from the chairperson to the board.

Under the civil service personnel policies, however, the board did not have the right to designate itself as an appointing authority by resolution. Although the change did not affect the property interest of any employee,[25] the resolution did modify the board's relationship with the chairperson by transferring the power to appoint and discharge all covered employees from the chairperson to the board. Just as the board could not declare by resolution that it was the appointing authority for the departments of participating constitutional and statutory officers, it could not assume the chairperson's power to hire and fire county employees under the civil service system simply by passing a resolution.

Like its attempt to supervise department heads, the board chose an invalid method for designating itself as the appointing authority of county employees.[26] Accordingly, we conclude that the board exceeded its powers in naming itself as the appointing authority of county employees and in hiring an administrative assistant to the board.

---

[24] See OCGA § 36-1-21 (providing that the county governing authority may create a civil service system for county employees, other than elected officials or persons appointed for specific terms of office).

[25] See *Wayne County v. Herrin*, 210 Ga. App. 747 (437 SE2d 793) (1993) (termination of current employees covered by civil service system without due process was improper); see also *Zimmerman v. Cherokee County*, 925 F. Supp. 777 (N.D. Ga. 1995) (deputy sheriffs in county without a civil service system lack a property interest in their employment).

[26] See *Gray*, 249 Ga. at 163; *Guhl*, 237 Ga. at 588.

5. Having reviewed the remaining two claims, we find nothing that prohibits the board from passing the challenged 1997 resolutions. Although the chairperson is required to bring all matters pertaining to the board's duties to its attention at its regular meetings, this duty does not preclude other board members from also placing items on the agenda.[27] In addition, the board may require the chairperson to provide copies of official county correspondence to assist the board in carrying out its duties. We do not interpret its resolution as requiring him to provide copies of any correspondence, such as personal letters, that are unrelated to the county's business.

In summary, we conclude that neither the constitution nor general laws prohibits the board from assuming authority over county personnel matters. We hold only that the local acts and county personnel policies prevent the Walton County board from assuming the power to hire, supervise, and fire county employees without amending the local acts. Therefore, we reverse the portions of the trial court's order that upheld the board's actions in designating itself as an appointing authority and immediate supervisor of county department heads, but affirm the two 1997 resolutions concerning the board's agenda and chairperson's correspondence.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Benham, C. J., who concurs in part and dissents in part.*

BENHAM, Chief Justice, concurring in part and dissenting in part.

I fully concur with the majority's determination that the actions of the Board of Commissioners challenged by the board chairperson did not violate the Georgia Constitution or general laws of the State. I also endorse the majority's position that the chairperson executes the county's business, as directed by a majority of the board, and is the supervisor of all county employees. The majority and I part ways on the issue of who the General Assembly, through the passage of local legislation, has empowered to hire and fire Walton County employees.

The majority believes that the local legislation's failure to delegate specifically the power to hire and fire results in a vacuum which the majority fills by implication. The majority opines that the board does not have authority to hire and fire county employees since it has only been given authority to hire specific employees, and concludes that the power to hire and fire arises out of the chairperson's power to superintend the work of the county. Maj. Op. pp. 682-683. I suggest

---

[27] Cf. *Capes v. Morgan*, 235 Ga. at 7 (remanding for trial court to decide if chairman had legal duty to place a commissioner's accusation on the calendar of the Newton County Board of Commissioners).

that the vacuum which leads to the majority's interpretation by implication does not exist, as the local legislation gives the full board "complete authority and control over all county matters" (Ga. L. 1971, p. 4052, § 1) and mandates that a majority vote of the board direct the use of all county property[28] (Ga. L. 1960, p. 2063, § 1). I believe that the power to hire and fire the employees working for the county is included within these "catch-all" provisions. My position is supported by the local legislation's proviso that *all* powers to purchase and contract on matters exceeding $5,000 vest in the full board, and that "[a]ll contracts over $5000 shall be approved and signed by a majority vote of said board before they are entered into." Ga. L. 1996, p. 3983, § 1. It is likely that most county employees are paid more than $5,000 for their work. I note that even the majority's definition of the chairperson's power to "superintend" employees (Maj. Op. p. 682) does not include the power to offer employment to an individual or to discharge an employee; rather, a superintendent oversees, directs, supervises. Id. While the board's chairperson is authorized to supervise the work done by county employees, the employees are afforded some protection from the whims of the supervisor since it takes a majority of the five-member board to hire or fire the employees supervised by the chairperson.

The majority supports its determination by concluding that it is in line with the board's personnel policy instituted by the board after the passage of the local legislation at issue. I submit that it is inappropriate to use a county ordinance to bolster one's interpretation of pre-existing legislation passed by the General Assembly. Here, governing officials at odds with one another over the division of their governing authority sought judicial determination of their respective powers, and the judiciary responds by rendering a decision based on how the officials have exercised their authority. Our review should be limited to the "four-corners" of the legislation involved, and that legislation bestows upon the full board of commissioners full control and authority over all county matters, including directing how county property is to be used. Because I believe that the full board's broad power and authorization includes the ability to hire and fire county employees, I must respectfully dissent from the majority's belief that the full board has no say with regard to county employment matters and how county monies are expended in order that the county's work is done.

---

[28] I see "county property" as including the funds available to the county and used to employ persons to do the county's work.

DECIDED JULY 16, 1998 —
RECONSIDERATION DENIED JULY 31, 1998.

*Dillard & Galloway, George P. Dillard, Howell F. Wright, Jr.,* for appellant.

*Fortson, Bentley & Griffin, J. Edward Allen, Michael M. Duclos, Richard L. Ford, Jr.,* for appellees.